UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,　　　　　　　　　Crim. No. 02-342-HA
　　　　　　　　　　　　　　　　　　　　　　　　Civil No. 05-1136-HA

DAVID EVERETT BOOTHROYD,　　　　　　　OPINION AND ORDER

    Defendant/Petitioner.

HAGGERTY, Chief Judge:

    On July 19, 2005, petitioner filed a Petition for a Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2255. Petitioner alleges that his former attorneys provided ineffective assistance of legal counsel by not pursuing his eligibility for guidelines sentencing instead of the statutory minimum sentence, as provided for under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. The court held an evidentiary hearing on December 6, 2005 to determine whether petitioner would have been

1 - OPINION AND ORDER

eligible for guidelines sentencing under those sections, which are commonly referred to as the "safety valve." For the following reasons, the court finds defendant would have been eligible for the safety valve and that, therefore, his former counsels' failure to pursue sentencing under the safety valve constituted ineffective assistance of counsel.

**BACKGROUND**

On April 5, 2002, petitioner was charged in Clackamas County with manufacture and delivery of a controlled substance. Petitioner retained attorney Daniel Patrick Woram to represent him against these charges. When a federal indictment appeared likely, petitioner retained the firm of Birmingham & Mackeson as additional counsel, and was represented by Wayne Mackeson and Pat Birmingham (hereinafter referred to as federal counsel).

At the time of petitioner's arrest, numerous weapons were confiscated by law enforcement officers. Ten shotguns, nine rifles, and two pistols were seized from a gun safe in his home. Petitioner also had one twenty-two caliber Marlin hunting rifle (Marlin rifle) located in a cabinet in an outbuilding, adjacent to the doorway leading into the room containing the marijuana grow operation. Ammunition for this rifle was found in petitioner's truck. Petitioner is a lifelong hunter, and several of his guns had sentimental meaning to him. In light of this, two weapons were returned to petitioner's family.

On August 15, 2002, a federal grand jury indicted petitioner on a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), knowingly manufacturing more than 100 marijuana plants. The state case was subsequently dismissed in November 2002.

On January 3, 2003, this court denied petitioner's Motion to Suppress Evidence. Petitioner

waived his right to a jury trial, and on January 15, 2003, the parties stipulated to facts sufficient to support finding petitioner guilty beyond a reasonable doubt (Doc. #16). A presentence report was prepared, which identified an applicable guidelines range of twenty-four to thirty months. The charged offense had a statutory minimum sentence of sixty months.

Federal counsel explained that the charge carried a sixty-month statutory minimum sentence, but did not advise petitioner of the existence of the safety valve. If petitioner had established his eligibility for the safety valve, petitioner would have been sentenced under the federal guidelines and not subject to any statutory minimum sentence. Federal counsel failed to investigate whether petitioner could have demonstrated his eligibility for the safety valve. On March 31, 2003, the court sentenced petitioner to the statutory minimum sentence of sixty months. Petitioner began serving his sentence on May 15, 2003.

## STANDARDS

Ineffective Assistance of Counsel Standards

To succeed on his claim for ineffective assistance of counsel, petitioner must demonstrate that his counsel's performance was below the objective standard of reasonableness and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 690, 694 (1984). A petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome in the case," but need only demonstrate "a probability sufficient to undermine confidence in the outcome." *Id.* at 693-94.

Although there exists a strong presumption that counsel's performance falls within the "wide range of professional assistance," *Strickland*, 466 U.S. at 689, defense counsel must, "at a minimum, *conduct a reasonable investigation*, enabling him to make informed decisions about how best to represent his client." *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (citing *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994) (emphasis in original). The Supreme Court has emphasized the importance of counsel's investigation and production of mitigating evidence in analyzing the effectiveness of counsel. *See, e.g., Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000). In reviewing ineffective assistance of counsel claims, the court must "evaluate the totality of the available mitigation evidence - both that adduced at trial, and the evidence adduced in the habeas proceedings." *Williams*, 529 U.S. at 397-98.

Safety Valve Eligibility Standards

Under the safety valve applicable at the time of petitioner's sentencing, a court was required to impose a sentence pursuant to the guidelines "without regard to any statutory minimum sentence" if the court found at sentencing that:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).

The Supreme Court has held that for purposes of evaluating whether a person's weapon possession precludes eligibility for the safety valve, the "firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident or coincidence." *Smith v. United States*, 508 U.S. 223, 238 (1993). The Court noted that the "gun at least must facilitate, or have the potential of facilitating, the drug trafficking offense." *Id.* (quotation and citation omitted).

The Ninth Circuit has distinguished the analysis for determining whether possession of a weapon precludes the safety valve from the analysis required for enhancing a sentence because of firearm possession under U.S.S.G. § 2D1.1(b)(1) (the gun enhancement). In *United States v. Nelson*, 222.F.3d 545 (9th Cir. 2000), the court stated that:

> In this circuit, once the government demonstrates that a defendant possessed a dangerous weapon, to avoid a sentence enhancement under § 2D1.1(b)(1), the burden of proof is on the defendant to prove that it is "clearly improbable" that he possessed a weapon in connection with the offense.
>
> * * *
>
> In contrast, although the burden of proof for the safety valve under §5C1.2 also remains on the defendant, to qualify for relief the

> defendant must only prove by a "preponderance of the evidence" that
> a weapon was not used in connection with the offense.

*Id*. at 549-550 (citations omitted).

Other circuits have recognized this critical distinction between the safety valve and the gun enhancement. *See, e.g.*, *United States v. Zavalza-Rodriguez*, 379 F.3d 1182 (10th Cir. 2004) (finding *Nelson* instructive); *United States v. Bolka*, 355 F.3d 909, 914 (6th Cir. 2004) (citing *Nelson*); *United States v. DeJesus*, 219 F.3d 117 (2nd Cir. 2000).

In deciding whether possession of a weapon precludes safety valve eligibility, the court must determine by a preponderance of the evidence whether a weapon was used in connection with the charged offense. A "closer degree of connection is necessary to preclude application of the safety valve than is necessary for a finding of possession under [the gun enhancement]." *United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1187 (10th Cir. 2004).

## ANALYSIS

Petitioner asserts that he received ineffective assistance of counsel because his federal counsel failed to investigate and determine his eligibility for the safety valve. Failure to investigate or prepare adequately for sentencing may render counsel ineffective. *See Wiggins*, 539 U.S. at 522-23; *Williams*, 529 U.S. at 395. A court must "focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins*, 539 U.S. at 523 (emphasis in original). Defense counsel is required to conduct a reasonable investigation in order to make informed decisions on how best to represent a client. *Rios*, 299 F.3d at 805.

Federal counsel failed to conduct any investigation as to petitioner's eligibility for the safety valve. This court conducted an evidentiary hearing to determine petitioner's eligibility for the safety valve on December 6, 2005. At that hearing, Mackeson testified that based on the location of the Marlin rifle, he assumed petitioner lacked a credible argument that the Marlin rifle was not possessed in connection with the crime. Federal counsel did not conduct any investigation as to why the gun was located in that cabinet.

This failure to investigate and pursue the safety valve fell below the objective standard of reasonableness and satisfies the first prong of petitioner's ineffective assistance of counsel claim. *See, e.g. United States v. Frank*, 230 F.3d 811, 814 (5th Cir. 2000) (finding failure to dispute a sentencing enhancement under the guidelines to be unreasonable). Federal counsel's assumption that petitioner was ineligible for the safety valve was unreasonable, and "any decision to forgo a defense on the basis of unreasonable assumptions is not a reasonable decision or a strategic or tactical decision entitled to deference." *Rios*, 299 F.3d at 806. Petitioner was entitled to offer evidence that he was eligible for the safety valve.

However, to succeed on his ineffective assistance of counsel claim, petitioner must also show that he suffered prejudice from federal counsel's failure to pursue the safety valve. As noted above, petitioner must show some reasonable probability that, but for counsel's errors, petitioner's underlying proceedings would have concluded differently. *Strickland*, 466 U.S. at 687. If petitioner's eligibility for the safety valve were known at the time of his sentencing, he would have received a significantly reduced sentence. Therefore, if petitioner were eligible for the safety valve, he suffered prejudice as a result of federal counsel's errors.

Safety Valve Eligibility

Respondent argues that petitioner was ineligible for the safety valve. Respondent disputes that petitioner would have met two of the safety valve requirements: (1) that a gun was not possessed in connection with the crime, and (2) that petitioner would have made a truthful and complete disclosure. Those arguments are rejected.

*1. Gun Possession*

Respondent first argues that the Marlin rifle discovered in the cabinet of the outbuilding adjacent to the entrance of the marijuana grow would have prevented petitioner from receiving the safety valve. As noted above, Mackeson explained that he assumed petitioner was ineligible for the safety valve because of the location of the Marlin rifle.

It is true that finding a weapon in a defendant's residence is sufficient for the weapon to be considered possessed for purposes of the gun enhancement. *See United States v. Pitts,* 6 F.3d 1366, 1372-73 (9th Cir.1993). For the gun enhancement, there need not be a connection between the firearm and the offense. *See United States v. Restrepo*, 884 F.2d 1294, 1295 (9th Cir.1989).

In contrast, however, the safety valve requires a lesser burden and quantum of proof. *Nelson*, 222 F.3d at 551. As previously discussed, a defendant need only prove by a preponderance of the evidence that the gun was not possessed in connection with the crime. *Id*. (noting that for the gun enhancement a defendant must prove it was "clearly improbable that he possessed a weapon in connection with the offense," whereas for the safety valve a defendant need only demonstrate by a "preponderance of the evidence that a weapon was not used in connection with the offense"). A finding that a gun was possessed for purposes of the gun enhancement in no way precludes a

finding that the gun was not possessed in connection with the crime under the safety valve. *See Zavalza-Rodriguez*, 379 F.3d at 1187 (finding there was no "logical contradiction in our referring to a weapon as possessed for purposes of a sentence enhancement with one outcome and then referring to that same weapon for purposes of a sentence reduction with a different outcome"); *Bolka*, 355 F.3d at 914 ("The application of a § 2D1.1(b)(1) sentence enhancement does not necessarily preclude the application of a § 5C1.2(a) safety valve reduction."); *Nelson*, 222 F.3d at 551 (same).

The location of the Marlin rifle was not dispositive in determining petitioner's eligibility for the safety valve. *See, e.g.*, *Zavalza-Rodriguez*, 379 F.3d at 1187 (noting that to preclude the safety valve requires "active possession" and "a closer degree of connection").

Petitioner lived on a remote, 107-acre parcel in Molalla, Oregon, where he raised cattle. He kept horses, dogs, cats, and chickens on his property. There is a prevalence of cougars and coyotes in the area of petitioner's ranch. Affidavit of David E. Boothroyd (Boothroyd Affidavit), ¶ 8; Letter from David E. Williams, United States Department of Agriculture, to Kate Marshall, Federal Public Defender (March 10, 2003) (Exhibits in Support of Defendant's Motion, Exhibit 8). Petitioner explained that he stored his Marlin rifle in his truck or in the outbuilding for quick access to protect his livestock and property from predators and nuisance animals. Boothroyd Affidavit, ¶ 8. The only covered storage area inside the outbuilding large enough to contain the Marlin rifle is the cabinet adjacent to the door to the marijuana grow operation. The Marlin rifle is a hunting rifle, with a scope and special ammunition specifically designed for distance shooting. The ammunition for the Marlin rifle was discovered in petitioner's truck.

Petitioner never felt threatened in connection with his marijuana grow and did not feel the need to arm himself for any reason in connection with the marijuana operation. Boothroyd Affidavit, ¶ 7. The only people who were aware of the location of petitioner's grow operation were his wife and one longterm friend.

There is no evidence suggesting that petitioner's Marlin rifle "facilitated" or had "some purpose or effect" with respect to petitioner's charged criminal activity. *Smith*, 508 U.S. at 238. Accordingly, petitioner has met his burden and has demonstrated by a preponderance of the evidence that the Marlin rifle was not used in connection with the offense.

### 2. *Truthful Statement*

The government argues that petitioner "steadfastly declined" to make any statements "throughout pretrial discussions with his counsel." Government's Answer in Opp. to Defendant's Motion, at 4. Petitioner does not dispute that he told his attorneys he would not cooperate during the pretrial discussions at the state level. Petitioner does contend, however, that his situation had changed significantly by the time of his federal sentencing, and that he would have given a truthful disclosure at that time had he been advised adequately about the safety valve.

Under advice of counsel, petitioner declined to cooperate with the government in the initial state action. In February 2002, federal counsel, in describing the state plea offer, wrote, "Actually, it is no offer at all! David may as well take his chances in State or Federal court." Marshall Affidavit, Exhibit 8. Additionally, petitioner was given to understand that the plea offer required him to waive his right to an appeal, and his attorneys advised him against doing so. Boothroyd Affidavit, ¶ 10.

Under these circumstances, petitioner refused to disclose the identities of other people involved. Specifically, petitioner did not want to disclose the involvement of his wife. By early 2003, however, when petitioner was convicted in federal court and facing sentencing, the government knew of the involvement of petitioner's wife. Petitioner knew this, and no longer needed to protect the identity of his wife. Boothroyd Affidavit, ¶ 15.

Mackeson testified that he did not pursue the benefits petitioner could gain by making a truthful disclosure because he had concluded that the location of the gun precluded application of the safety valve. Therefore, petitioner remained ignorant of the significant advantages possible for providing truthful disclosure. In contrast to the deal offered in the state proceedings, the safety valve would have reduced petitioner's sentence by twenty to twenty-six months. The evidence in the record supports petitioner's argument that he would have made truthful disclosures had he been aware of the safety valve.

## **CONCLUSION**

After a comprehensive review of the briefs, record, and testimony from the evidentiary hearing, the court concludes that petitioner would have been eligible for the safety valve at the time of his sentencing. The failure by federal counsel to investigate or pursue the safety valve fell below the applicable objective standard of reasonableness to which counsel are held. Moreover, if not for the error of counsel, petitioner would have received a sentence within the guidelines range of twenty-four to thirty months, instead of the statutory minimum of sixty months. The outcome of the previous proceeding would have been different, and thus the error constitutes ineffective assistance of counsel.

Accordingly, petitioner's petition (Doc. #33) is GRANTED. Petitioner's sentence is vacated, and a new sentence of thirty months is imposed. Defendant has served this sentence, so he is to be immediately released from custody.

IT IS SO ORDERED.

DATED this __9__ day of December, 2005.

_____/s/Ancer L.Haggerty_____
Ancer L. Haggerty
United States District Judge